AUSAs: Justin L. Brooke, Jared D. Hoffman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

24mj1699
(JPH)

UNITED STATES OF AMERICA

v.

RYAN RIVERA, a/k/a "Patron,"

Defendant.

SEALED COMPLAINT

Violations of 18 U.S.C. §§ 924(c), 924(j), 1951, 21 U.S.C. §§ 841(b)(1)(A), 846

COUNTY OF OFFENSES:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

KYLE GORMAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

1. Between at least on or about March 18 and March 19, 2024, in the Southern District of New York and elsewhere, RYAN RIVERA, a/k/a "Patron," the defendant, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, the defendant conspired together and with others to rob at gunpoint a warehouse that sells various unlicensed marijuana and nicotine products in Mount Vernon, New York.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
### (Conspiracy to Distribute Narcotics)

2. In or about March 2024, in the Southern District of New York and elsewhere, RYAN RIVERA, a/k/a "Patron," the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

3. It was a part and an object of the conspiracy that RYAN RIVERA, a/k/a "Patron," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4. The controlled substance involved in the offense was (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A), and (ii) one thousand kilograms and more of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 846 and 841(b)(1)(A).)

## COUNT THREE
### (Firearms Use, Carrying, and Possession)

5. On or about March 19, 2024, in the Southern District of New York and elsewhere, RYAN RIVERA, a/k/a "Patron," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and (iii) and 2.)

## COUNT FOUR
### (Murder Through the Use of a Firearm)

6. On or about March 19, 2024, in the Southern District of New York and elsewhere, RYAN RIVERA, a/k/a "Patron," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm, and in the course of that crime caused the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111, and aided and abetted the same, to wit, RYAN RIVERA, a/k/a "Patron," aided and abetted the fatal shooting of a victim in the vicinity of South Fifth Avenue, Mount Vernon, New York during and in relation to the drug trafficking crime charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 924(j) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I have been a Special Agent with the FBI since approximately June 2022. Prior to joining the FBI, I had been a New Jersey State Trooper since January 2019. Over the course of my career, I have participated in numerous investigations of homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking offenses. I have been personally involved in the investigation of this matter.

8. This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement personnel, and my review of law enforcement records and other evidence, and my training, experience, and advice received relating to investigations into

homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking crimes. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

9. Based upon my participation in the investigation of this matter, my conversations with members of the Mount Vernon Police Department ("MVPD") and other members of the FBI investigating this matter, my review of video surveillance, and my review of related law enforcement reports and records, I have learned the following:

   a. On or about March 18, 2024, at approximately 10:00 p.m., two customers (the "Customers") arrived at an address on South Fifth Avenue in Mount Vernon, New York, a wholesale warehouse that sells various unlicensed marijuana and nicotine products (the "Warehouse"). The two Customers placed an order for a large quantity of vapes and hookahs, among other items, from the Warehouse. It took employees of the Warehouse approximately two hours to prepare their order.

   b. A little after midnight, on March 19, 2024, after the Customers' order was prepared, two employees from the Warehouse helped the Customers carry the boxes containing the Customers' merchandise from the Warehouse to the Customers' vehicle. At that point, according to statements provided by the Warehouse employees and the Customers, as well as video surveillance, roughly between ten and fifteen people (the "Targets"), exited a van (the "Van") that was parked near the Warehouse and ran over to the Warehouse's employees and Customers. Many of the Targets possessed and brandished firearms.

   c. According to one of the two Customers, when the Targets got out of the Van, they ran over to the two employees and the Customers, pointed their firearms at them, forced them to go back inside the Warehouse, and shouted, "lay down, lay down." Still images from video surveillance outside the Warehouse during the armed robbery are depicted below:



3




        d.     Shortly after the Targets jumped out of the Van and approached the Warehouse employees and Customers with firearms, a gunfight between the Warehouse employees and the Targets broke out.

        e.     At approximately 12:15 a.m., multiple MVPD officers responded to the armed robbery at the Warehouse. At the Warehouse, the MVPD officers observed a black male lying on the floor with an apparent gunshot wound to his head. He was wearing green and white sneakers, grey and black jeans, and a black Nike hooded sweatshirt with the hood covering his face. Emergency Medical Services ("EMS") on scene pronounced him dead at 12:36 a.m. Based on a fingerprint analysis I performed on the deceased individual and my participation in this investigation, I know the identity of this deceased individual and am aware that he was one of the Targets who participated in the armed robbery of the Warehouse.

        f.     At the Warehouse, MVPD officers also observed another male lying under a shelving unit in the Warehouse, with two apparent gunshot wounds to his torso, one gunshot wound to his left upper chest, and one to the lower left abdomen (the "Victim"). EMS transported the Victim to a Mount Vernon hospital, where he was pronounced dead at 1:07 a.m. An employee of the Warehouse confirmed that the Victim was also an employee of the Warehouse.

        g.     At the Warehouse, MVPD officers recovered an AR-15 firearm, four AR spent shell casings, and three spent 9mm shell casings. According to a Warehouse employee, the AR-15 was owned by the Warehouse and stored behind the register for protection purposes. Law enforcement also seized from the Warehouse approximately 1,665 pounds of marijuana recovered in leafy form, and 1,107 pounds of Tetrahydrocannabinol-infused edibles.

        10.     On March 20, 2024, several of the Targets were arrested and charged for their roles in the armed robbery. Following their arrests, at least one Target consented to a search of his cellphone (the "Target Cellphone") by the FBI. Based on location data obtained from the Target Cellphone, I learned that the Target Cellphone was in the vicinity of a certain building on Exterior Street (the "Exterior Street Building") in the Bronx, New York, both before and after the armed

robbery. Review of surveillance video from the Exterior Street Building also shows that certain Targets, matched through the distinctiveness of their clothing, returned from the Warehouse to the Exterior Street Building roughly twenty to thirty minutes after the robbery at the Warehouse.

### Identification of the Defendant

11.     Surveillance video from the Exterior Street Building also shows the individual pictured below on or about March 19, 2024, at approximately 12:37 a.m., which is approximately twenty minutes after the armed robbery of the Warehouse:



12.     Based on my participation in this investigation, I am aware that following the armed robbery, a source of confidential information[1] ("CI-1") participated in voluntary interviews with the FBI and told them, in substance and in part, the following: (i) that CI-1 participated in the armed robbery himself; (ii) an individual known to him as "Patron" was one of the organizers of the plan to commit the armed robbery of the Warehouse; (iii) in the hours leading up to the armed robbery, "Patron" drove a few individuals from the Bronx, New York to Mount Vernon, New York in a dark-colored Infiniti in order to scout the Warehouse; (iv) approximately 30 minutes before the armed robbery, "Patron" got into the Van to explain the plan to commit the armed robbery of the Warehouse to a group of Targets in the Van. CI-1 identified the person pictured above in

---

[1] The CI has a prior conviction for disorderly conduct. The CI has previously provided information to federal law enforcement which has proven reliable and been corroborated. The CI did not, however, disclose his involvement in this robbery until after it was completed.

paragraph 11 as "Patron" and the same person CI-1 knew to be an organizer of the armed robbery of the Warehouse; (v) "Patron" was in his mid-40s and speaks English; and (vi) "Patron" drove a dark Infiniti to the Warehouse on the night of the armed robbery.

13. Pursuant to multiple search warrants, including a warrant for a cell-site simulator for a certain device that I believed belonged to a Target (the "Target Cellular Device"), I learned that on or about April 28, 2024, the Target Cellular Device was located in a multifamily apartment building in or around Brooklyn, New York (the "Target Premises").

14. On or about April 28 and 29, 2024, members of law enforcement conducted surveillance of the Target Premises. During the period of approximately 11:35 to 11:55 a.m., I observed an individual ("Individual-1") exit the Target Premises and walk to the sidewalk twice prior to reentering the Target Premises. On one of these short trips from the front door of the Target Premises to the sidewalk outside the Target Premises, Individual-1 carried bags from inside the Target Premises and placed them in the trunk of a dark Infiniti sedan parked on the street just outside the front of the Target Premises.

15. After Individual-1 exited the Target Premises a third time, Individual-1 walked towards the sidewalk in front of the Target Premises and engaged in brief conversation with other individuals who were walking down the street. During this conversation, members of law enforcement stopped Individual-1 and proceeded to detain him. At the moment Individual-1 was detained, he was roughly fifteen feet from the front door of the Target Premises, and the front door remained open. As part of securing the safety of law enforcement personnel and civilians at the scene, members of law enforcement asked Individual-1 if any persons were inside the Target Premises, and Individual-1 stated that there were two other people inside.

16. Members of law enforcement called for the persons inside the Target Premises to come to the front door; after they did not come to the front door, members of law enforcement then performed a protective sweep of the Target Premises. When inside the Target Premises, members of law enforcement encountered two individuals. Members of law enforcement observed in plain view a distinctive black sweatshirt with a white Champion logo hanging on the door of one of the bedrooms, and distinctive black boots on the floor of the bedroom at the foot of a bed, all in plain view.

17. I reviewed the photograph of "Patron" above in Paragraph 11, which was taken approximately twenty minutes after the armed robbery on March 19, 2024, and determined that the black sweatshirt with a white Champion logo and the black boots found in the Target Premises were consistent with the clothing Individual-1 was wearing approximately twenty minutes after the armed robbery.

18. In addition, based upon my review of surveillance video from the Exterior Street Building, Individual-1 matches the physical stature, haircut, and facial features of "Patron" from the surveillance video, and is in his mid-40s and speaks English, which matches the physical description of "Patron" provided by CI-1.

19.     After Individual-1 was arrested, he told law enforcement that his name was RYAN RIVERA.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of RYAN RIVERA, a/k/a "Patron," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
KYLE GORMAN
Special Agent
Federal Bureau of Investigation

Sworn to before me this 29th day of April, 2024.

_____
THE HONORABLE JUDITH C. McCARTHY
United States Magistrate Judge
Southern District of New York